IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO: 25-CV-303

**JANE DOES 1 and 2**, on behalf of themselves
and others similarly situated,

    Plaintiffs,

v.

**MATTHEW WEISS, HIGH POINT UNIVERSITY**,
and **KEFFER DEVELOPMENT SERVICES, LLC**.

    Defendants.

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL

Plaintiffs Jane Does 1 and 2, by and through undersigned counsel, hereby submit this memorandum in support of Plaintiffs' Motion for Appointment of Interim Class Counsel, filed contemporaneously herewith.

### NATURE OF THE MATTER AND QUESTION PRESENTED

Plaintiffs seek the appointment of interim class counsel pursuant to Federal Rule of Civil Procedure 23(g)(3).

### I. INTRODUCTION

Plaintiffs filed this putative class action to recover damages for data breach and cyber sexual assault of students and alumni brought about by Defendants (Dkt. No. 1) and now request

that their counsel be appointed as interim class counsel.[1] Mr. Weiss has been invading female, and some male, athletes' privacy since 2015, or possibly even before. He has done so while employed by the University of Michigan, but also while employed by other institutions or companies. He has utilized information from the Keffer data files to accomplish his work but also hacked directly into university systems likely without Keffer. His activities span the country, from Massachusetts to California and from Michigan down to North Carolina. Plaintiffs allege invasion of privacy and cyber sexual assault brought about by Defendants.

Plaintiffs' counsel Thompson, Bonanni and Mills (collectively "Movants") possess the requisite experience, commitment, resources and leadership qualities under Federal Rule of Civil Procedure 23(g).

## II. FACTS

### A. Background of Litigation

#### 1. The Weiss Indictment

The Indictment establishes that Weiss' hacking activities took place from 2015-2023. **Exhibit 1**, *Weiss Indictment*, p.1) During that time, he illegally obtained access to student athlete databases of more than 100 colleges and universities that were maintained by Keffer Development Services ("Keffer"), and downloaded the personally identifiable information ("PII") and medical data of more than 150,000 athletes. (*Id*. p. 2). Using data obtained from systems maintained by Keffer, Weiss was then able to obtain access to the social media, email, and/or cloud storage accounts of more than 2,000 targeted athletes by guessing or resetting passwords. (*Id*. pp. 2-3).

---

[1] Plaintiffs were students of High Point University.

Weiss also directly exploited vulnerabilities in universities' account authentication processes to gain access to the accounts of students and alumni. Leveraging his access to these university accounts, Weiss was able to obtain access to the social media, email, and/or cloud storage accounts of an additional 1,300 students and/or alumni. (*Id*. p. 3).

Ultimately, all the access allowed Weiss to search for and download personal, intimate photographs and videos that were not publicly shared, thus engaging in a systematic and wide-ranging digital form of sexual assault for over 8 years. (*Id*. pp. 2-3).

The first lawsuits arising from the Weiss hack were filed in The United States District Court for the Eastern District of Michigan, naming as defendants the University of Michigan, Matthew Weiss ("Weiss") and data provider company, Keffer Development Services, LLC. ("Keffer"). Eight cases are now on file, including from the undersigned firms of Sommers Schwartz ("Sommers") and Pitt, McGehee, Palmer, Bonanni & Rivers P.C. ("Pitt"). ("Michigan Cases").[2] Weiss' hacking activities went well beyond the walls of the University of Michigan and, in fact, implicate the security processes of other colleges/universities, third party data vendors, and technology providers across this country. (*See*, Indictment).

---

[2] *Jane Roe CLR 001, et al. v. Matthew Weiss, et al.,* Case No. 2:25-cv-10870-MAG-EAS (E.D. MI); *Jane Doe, et al. v. The University of Michigan, et al,* Case No. 2:25-cv-10876-MSG-EAS (E.D. MI); *Jane Doe 1 and Jane Doe 2, et al., v. Matthew Weiss, et al.,* Case No. 2:25-cv-10806-MAG-EAS (E.D. MI); *Jane Doe 1 and Jane Doe 2, et.al., v. Matthew Weiss, et al.,* Case No. 2:25-cv-10855-MAG-EAS (E.D. MI); *Jane Doe 1, et al., v. Matthew Weiss, et al.*, Case No. 2:25-cv-10946 (E.D. MI) (originally Case No. 1:25-cv-04233 (N.D. IL*); Jane Doe, et al, v. The University of Michigan Board of Regents, et al.*, Case No. 2:25-cv-10951-MAG-EAS (E.D. MI); *Jane Doe 1 v. Matthew Weiss, et al.*, case No. 2:25-cv-10988-MAG-EAS (E.D. MI); *Student Doe, et al., v. The University of Michigan Board of Regents, et al.,* Case No. 2:25-cv-10999-MAG-EAS (E.D. MI).

### 2. Other Federal Complaints

The litigation strategy of "Movants has been guided by our longstanding and ongoing partnership with the federal law enforcement involved and a cyber expert (already retained), reflecting the reality that there are multiple responsible parties in this tragedy, including other colleges and universities, third-party data vendors, and technology providers.

Movant's investigation into the facts, including speaking with nearly 100 victims who were directly impacted, and individuals associated with the Weiss criminal case, including individuals involved in the Department of Justice (DOJ) investigation, indicates that Mr. Weiss' activities and cyber assaults were not limited, or connected solely, to the University of Michigan. Nor were they limited, or connected solely, through data provider company Keffer. Continuing investigation by Sommers and Pitt attorneys has confirmed the names of some of the 100 colleges and universities other than the University of Michigan who may face liability for the data breach that has injured the putative class member students and alumni. **Exhibit 1** at ¶6.

Sommers and Pitt have been retained by over 60 students and alumni, men and women, who received notices from the United States Department of Justice that their private data was indeed accessed and stolen by Mr. Weiss. Lawsuits for some of these victims have been filed in Illinois, California, Massachusetts, Ohio, and North Carolina. *See* **Exhibit 2,** *Jane Doe 1, et al, v. Matthew Weiss, et al., 1:25-cv-04233 (N.D. Ill.)*; *see also,* **Exhibit 3,** *Jane Doe 1, et al., v. Matthew Weiss, et al.*, Case No. 5:25-cv-00997 (C.D. CA); **Exhibit 4**, *Jane Doe, et al. v. Matthew Weiss, et al.*, Case No. 1:25-cv-11151 (D. MD); **Exhibit 5,** *Janes Does 1 and 2, et al. v. Matthew Weiss, et al., No. 25-cv-303 (MDNC)*.

4

Case 1:25-cv-00303-CCE-JLW   Document 5   Filed 05/05/25   Page 4 of 18

## B.     May 14th Case Management Conference in Eastern District of Michigan

The importance of class counsel leadership has grown rapidly. On April 22nd the Hon. Mark Goldsmith entered an order in the eight Michigan cases setting an initial case management conference for the Michigan cases for May 14, 2025. **Exhibit 6,** *Case Management Conference Order*. Judge Goldsmith required a meet and confer by all parties to identify the case management issues, including each party's position on those issues, by April 30th. *Id.* Based on the joint agenda, the issues for discussion will, in part, include coordination of cases filed in other jurisdictions, the early motions for discovery or stay, and organizing plaintiffs' leadership. *See* **Exhibit 7,** *Tentative Joint Submission*.

The early motion practice in the Michigan Cases includes motions for consolidation, early discovery and ESI preservation, injunctions, and a case management conference. Movants alerted Judge Goldsmith of the impending federal cases in other states and suggested the issue of coordination – either informally or through 28 U.S.C. §1404(a) or 28 U.S.C. §1407 (MDL), was ripe for discussion.[3] And Movants were the first to suggest that pragmatic leadership be put in place in their motion for a case management conference. **Exhibit 8 -** *Motion for Case Management Conference*.

## ARGUMENT

Movants counsel Thompson, Bonanni and Mills should be designated interim class counsel because they satisfy the criteria set forth in Fed. R. Civ. P. 23(g), and appointing interim class counsel is necessary to protect the interests of the putative class. Generally, such counsel has the

---

[3] Since Sommers and Pitt were the only counsel with cases on file against Mr. Weiss in other jurisdictions, they were the only counsel to raise the broader question of coordination beyond just the eight Michigan cases.

5

Case 1:25-cv-00303-CCE-JLW    Document 5    Filed 05/05/25    Page 5 of 18

responsibility for "protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual for Complex Litigation (Fourth) § 21.11 at 246 (2004) ("Manual"). In fact, appointment of interim class counsel during the pre-certification period may be appropriate, as "it will usually be important for an attorney to take action to prepare for the certification decision." Advisory Committee Note to Rule 23(g)(2)(A) (2003 amendments).

## I. ATTORNEYS JASON J. THOMPSON, MEGAN BONANNI AND JAMES MILLS SATISFY THE STANDARDS FOR APPOINTMENT AS INTERIM CLASS COUNSEL

Designation of interim class counsel is governed by Federal Rule of Civil Procedure Rule 23(g)(3). Rule 23(g)(3) was originally enacted as Rule 23(g)(2)(A) on December 1, 2003. Rule 23(g)(2)(A) authorized the designation of interim class counsel if necessary to protect the interests of the putative class. *See* Advisory Committee Notes to Rule 23(g)(2)(A). The Advisory Committee specifically recognized that there may be circumstances that cause uncertainty prior to certification or that it otherwise may be appropriate to designate interim class counsel to protect the putative class's interests:

> **Paragraph (2)(A)** authorizes the court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class. Rule 23(c)(1)(B) directs that the order certifying the class include appointment of class counsel. Before class certification, however, it will usually be important for an attorney to take action to prepare for the certification decision. The amendment to Rule 23(c)(1) recognizes that some discovery is often necessary for that determination. It also may be important to make or respond to motions before certification. Settlement may be discussed before certification.

*Id.*

While neither Rule 23(g) nor the Advisory Committee Notes to the Rule explicitly set forth the standards to be applied in choosing interim class counsel, courts have held that the same factors

6

set out in Rule 23(g)(1)(A) that apply in choosing class counsel at the class certification stage apply in choosing interim class counsel. *In re Packaged Ice Litig.*, No. 08-MD-01952, 2009 U.S. Dist. LEXIS 45492, at *28 , 2009 WL 1518428 (E.D. Mich. June 1, 2009) (applying Rule 23(g) factors to the appointment of interim class counsel); *Parkinson v. Hyundai Motor Am.*, 2006 U.S. Dist. LEXIS 59055, at *6, 2006 WL 2289801 (C.D. Cal. Aug. 7, 2006) ("Rule 23(g) provides criteria to consider when appointing class counsel, without distinguishing interim counsel. Presumably, the same factors apply, however"); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006) (the same standards applicable to choosing class counsel at the time of class certification should apply in choosing interim class counsel), *overruled in part on other grounds by In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 U.S. Dist. LEXIS 97365, 2009 WL 3443405 (Aug. 21 2009).

Fed. R. Civ. P. 23(g)(1)(A) specifies four factors that a court must consider in appointing class counsel:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

*Id.*

While all of these factors are relevant, no single one of these factors is determinative. *See* Advisory Committee Notes to the 2003 Amendments to Fed. R. Civ. P. 23(g) ("In evaluating prospective class counsel, the court should weigh all pertinent factors. No single factor should

necessarily be determinative in a given case."). In addition, a court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Mr. Thompson, Ms. Bonanni and James Mills, along with their firms, meet the requirements of Rule 23(g).

### A. JASON J. THOMPSON, MEGAN BONANNI AND JAMES MILLS HAVE EXPENDED SUBSTANTIAL RESOURCES IN IDENTIFYING AND INVESTIGATING POTENTIAL CLAIMS IN THE LAWSUIT

Pursuant to Rule 23(g)(1)(A)(i), in selecting interim class counsel, a court "must consider the work counsel has done in identifying or investigating potential claims in the action." As a result of their independent and extensive work in investigating potential claims, lawyers from Sommers and Pitt are among the first, and as to Loyola University Chicago; California State University, San Bernardino; Malone University; and High Point University only, counsel to file a class action lawsuit of this kind against the Defendants. A review of the detailed Complaint shows that Plaintiffs' counsel expended significant resources in investigating and analyzing the claims. The lawsuit is the result of numerous hours of attorney time and investigation, including extensive legal research and document review, resulting in the filing of the lawsuit on April 24, 2024. Furthermore, they continue to investigate the facts and extent of the data breach and cyber sexual assault through discussions with law enforcement and prosecutors. The extent of hacking and methods utilized by Mr. Weiss remain an evolving and yet unbounded query. The "work" factor set forth in Rule 23(g)(1)(a)(i) weighs in favor of appointing Mr. Thompson, Ms. Bonanni and Mr. Mills as Interim Class Counsel.

### B. JASON J. THOMPSON, MEGAN BONANNI AND JAMES MILLS HAVE EXTENSIVE CLASS ACTION EXPERIENCE AND KNOWLEDGE OF THE LAW

The second and third Rule 23(g)(1)(A) factors (which courts often consider together because of their overlap) are "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," and "counsel's knowledge of the applicable law." These factors are often noted as the most persuasive factors in choosing lead counsel. Fed. R. Civ. P. 23(g)(1)(A)(ii) and (iii); *see also In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) (the "most persuasive" factor in choosing lead counsel pursuant to Rule 23(g) is proposed counsel's "experience in, and knowledge of, the applicable law in this field"). Mr. Thompson, Ms. Bonanni and Mr. Mills satisfy these factors.

### 1. Thompson and Sommers Schwartz

Jason Thompson and the other lawyers in Sommers' Complex Litigation Group have extensive experience litigating complex cases. Mr. Thompson co-chairs Sommers Schwartz's Complex Litigation Group, and the Sommers' attorney resumes are attached. *See* **Exhibit 9 ("Ex. 9")**, *Sommers Schwartz Bio*. Sommers' lawyers have extensive experience in class action and multidistrict litigation (MDL), including cases involving contracts, insurance policies, defective pharmaceutical drugs and devices, automotive litigation, consumer rights, RICO, wage and hour violations, *qui tam* (False Claims Act and whistleblower cases), antitrust, and environmental torts. Sommers' lawyers represent institutional clients, such as the State of Michigan (Office of Financial and Insurance Regulation) municipalities, healthcare plans, and unions in complex business litigation, as well as individuals in personal injury and mass tort cases. Sommers' cases include price-gouging claims and personal injury cases against the world's largest pharmaceutical companies, including Pfizer, Merck, Eli Lilly, and Abbott. Thompson and Sommers' lawyers have successfully prosecuted environmental tort cases on behalf of residents enduring the effects of

chemical spills, air pollution, and other adverse effects of large industry, including cases against companies such as National Steel, ATOFINA Chemical, Inc., Dow Chemical, Inc., and Waste Management, Inc.

Mr. Thompson has also been appointed to leadership positions in a variety of other federal multidistrict proceedings, including the following: In Re: Recalled Abbott Infant Formula Products Liability Litigation MDL No. 3037 as Class Action Co-Chair of PSC; *Blue Cross Blue Shield Antitrust Litigation* (MDL No. 2406, Damages Committee); *Amgen Off Label Marketing Litigation* (MDL No.1934, Executive Committee); *In re: Neurontin Sales and Marketing* (MDL No. 1629, Purchase Claims Committee); *In re Vioxx Sales and Marketing* (MDL No. 1657, Purchase Claims Committee); *In re Bextra/Celebrex Sales and Marketing* (MDL No. 1699, Purchase Claims Committee); and *In re Zyprexa* (MDL No. 1596, Purchase Claims Committee).

### 2. Megan Bonanni and Pitt McGehee Palmer Bonanni & Rivers

Pitt McGehee Palmer Bonanni & Rivers is Michigan's leading civil rights and employment law firm, with a nationally recognized practice representing survivors of institutional abuse and individuals harmed by systemic failures. *See* **Exhibit 10,** *Pitt McGehee Palmer Bonanni & Rivers Bio*. The firm has over 32 years of extensive experience in class actions and complex litigation involving sexual abuse, racial and gender discrimination, retaliation, environmental injustice, and civil rights violations. Pitt McGehee attorneys have served in court-appointed leadership roles in mass and class actions against institutions including The State of Michigan, Michigan State University, USA Gymnastics, the FBI, the University of Michigan, Eastern Michigan University, Michigan State Police and the EPA, the Michigan Department of Corrections, among others. The firm also serve as co-lead in the class actions on behalf of residents impacted by the Flint Water

10

Crisis and has brought age and race class actions in discrimination claims on behalf of workers against corporations such as Ford Motor Company, Lucent, and FCA.

Megan Bonanni is an equity partner at Pitt McGehee Palmer Bonanni & Rivers and one of the most respected attorneys in the country handling cases of institutional sexual abuse and systemic discrimination. She served in a leadership role on the Survivors' Creditor Committee in the USA Gymnastics bankruptcy, securing a $390 million recovery against USA Gymnastics and the United States Olympic Committee, and helped negotiate a separate $138.7 million settlement with the FBI for its failure to act on early reports of Dr. Larry Nassar's abuse. Megan was also co-lead for the second wave of 160 Nassar cases brought by 40 law firms against Michigan State University. Megan was also appointed to the Plaintiffs' Steering Committee in the $490 million settlement involving more than 1,000 survivors of University of Michigan doctor Robert Anderson. In addition to her litigation work, Megan holds a leadership position on the USA Gymnastics and USOPC Restorative Justice Task Force and is working with Michigan legislators in efforts to reform the state's statute of limitations laws for survivors of sexual abuse. In 2024, Megan was named "Lawyer of the Year" by Michigan Lawyers Weekly for her outstanding contributions to civil litigation and in particular her success and advocacy in litigation on behalf of survivors of sexual assault.

### 3. James Mills of Mills and Burns Day & Presnell, P.A.

James Mills has been licensed to practice law in North Carolina and has remained in good standing with the State Bar since 2007.[4] He has been involved in several multidistrict litigation

---

[4] Mr. Mills is also licensed and in good standing with the State Bar of Georgia, and has been since 2002.

(MDL) matters, including matters involving pharmaceutical drugs, telecommunications matters, and toxic torts. He has been counsel in several class action matters in North Carolina and Georgia, including *Columbus Drywall & Insulation, Inc. v. Masco Corp* (N.D. Ga. 2006); *Danford v. Lowe's Home Ctrs., LLC* (W.D. N.C. 2019); *Hogg v. Retail Business Services, LLC* (M.D. N.C. 2023). He has served as counsel in federal court on *qui tam* (False Claims Act and whistleblower cases), antitrust matters and environmental torts. Burns Day & Presnell, P.A. was founded in Raleigh, NC, in 1987, and its attorneys have routinely practiced in the federal courts throughout North Carolina, and have represented municipalities, individuals, utilities, financial institutions and Fortune 500 Companies.

## II. AN EARLY APPOINTMENT OF INTERIM CLASS COUNSEL IS NECESSARY TO PROTECT THE INTERESTS OF THE PUTATIVE CLASS

Plaintiffs' counsel typically expend significant resources *before* class certification in responding to dispositive motions, securing and analyzing discovery, formulating litigation strategy, responding to inquiries from putative class members, drafting the motion for class certification, and possibly participating in settlement discussions. *See* Advisory Committee Notes to Rule 23(g)(2)(A), n/k/a Rule 23(g)(3) (interim class counsel may be necessary for purposes of conducting pre-certification discovery, making or responding to motions, and conducting settlement discussions). The complexity and scope of this case requires appointment of interim class counsel as early as possible.

Moreover, Plaintiffs' counsel in this case will need to secure agreement on ESI preservation, request and respond to initial disclosures, conduct discovery, and negotiate a schedule. To expedite the case, Plaintiffs' counsel must retain experts in addition to finding and joining other possible data companies. All these activities require attorneys who have been duly

12

appointed as interim class counsel to negotiate and enter into binding stipulations. Without that authority, all the above agreements are subject to later denial or challenge by other potential class members or their attorneys.

Second, despite the broad "all persons" class definitions in the Michigan Cases they are not limited to harm caused by just the University of Michigan, nor obviously just U of M students. Conversely, some of the named plaintiffs in some of the Michigan Cases never attended University of Michigan, but rather, attended other colleges and universities. However, those other schools are not named as defendants in the Michigan Cases, most likely due to lack of personal jurisdiction over the schools in the Eastern District of Michigan. Thus, while Mr. Weiss, and at least in some instances data company Keffer, are common defendants among the various lawsuits, the instant case, and others filed in federal courts naming the other schools as defendants, provide a broader picture of the full scope of the litigation. Rarely is interim class counsel appointment necessary when just one complaint has been filed, or all class members are represented by the same group of law firms. But, here, and most importantly, the putative class definitions in the Michigan cases are essentially the same in this case. The classes are therefore more than overlapping; *they are the same*.

Third, agreements will be reached with the Defendants in the Michigan cases, scheduling dates will be set and other case management decisions and orders will soon be issued. To be effective, coordination and leadership orders should consider all affected victims – as well as formal or informal coordination with other counsel with cases against Mr. Weiss, and different

13

schools, and in other jurisdictions.[5] In short, a one-size fits all approach to coordination is unlikely to provide effective case management of the several related actions. Rather, effective coordination will require early, careful and ongoing assessment of the scope of the cases, negotiations with all parties when all are affected, with preciseness amongst both victims and non-overlapping defendants where appropriate. Movants can, and will, do just that if they are appointed as interim class counsel by this Court.

Finally, although this case is in its infancy, as explained above, it is part of a larger set of cases. The May 14th case management conference in the Michigan cases is a good example of the activities that are likely to take place in the various cases now on file, and a good basis to make an early interim class counsel appointment in this case.

Based on the above, Movants believe an early appointment of interim class counsel by this court pursuant to Fed. R. Civ. P. 23(g)(3) on behalf of class members who have filed suit in this case is now appropriate to protect their interests, including specifically during the case management conference scheduled for May 14th in the Michigan Cases. In short, an order of interim class counsel appointment from this court provides the necessary authority from this court for Movants to speak to any issues, including for example coordination, that will arise during the May 14th case management conference. The Movants have extensively investigated the claims and have already been working to practically and carefully manage this growing litigation. Indeed,

---

[5] Indeed, there has been some preliminary debates among some lawyers about early informal coordination or whether more formal coordination is required. Movants' approach is to pragmatically assess the situation, considering the various laws of each of the jurisdictions, how those would be managed if informal coordination would take place (which would certainly be the place even if one or more parties moved for an MDL). Movants can explain their views on this and how they believe their leadership can assist all parties (including the victims) but saving all parties from wasting resources, particularly when some claims will not completely overlap.

no other plaintiffs' counsel have addressed the topic of coordination or centralization as an MDL, let alone have filed complaints on behalf of individuals alleging liability by other schools or data providers. Appointing interim class counsel also provides a clear line of accountability between interim class counsel and the class, this court and Eastern District of Michigan Judge Mark Goldsmith.

## CONCLUSION

For the foregoing reasons, Movants respectfully requests that the Court enter the Proposed Order attached as **Exhibit 11** designating **JASON J. THOMPSON J. THOMPSON, MEGAN BONANNI and JAMES MILLS** as Interim Co-Class Counsel.

Respectfully submitted this the 1st day of May 2025.

SOMMERS SCHWARTZ, P.C.

/s/ *Jason J. Thompson\**
Jason J. Thompson (P47184)
Attorneys for Plaintiffs
One Towne Square, 17th Floor
Southfield, MI 48076
 (248) 355-0300
JThompson@sommerspc.com
\*Appearing via Special Appearance (Pending)

PITT, MCGEHEE, PALMER, BONANNI, & RIVERS, P.C.

/s/ *Megan Bonanni\**
Megan Bonanni (P52079)
Attorneys for Plaintiffs
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
mbonnani@pittlawpc.com
\*Appearing via Special Appearance

16

BURNS, DAY & PRESNELL, P.A.

/s/ *James J. Mills*
NC BAR NO. 36529
Burns, Day & Presnell, P.A.
PO Box 10867
Raleigh, NC 27605
919.782.1441 (phone)
919.782.2311 (fax)
Jmills@bdppa.com

17

## CERTIFICATION PURSUANT TO LOCAL RULE 7.3(d)

I hereby certify that this Memorandum complies with the limitations set forth in Local Rule 7.3(d), and does not exceed 3,924 words.

## **CERTIFICATE OF SERVICE**

I certify that on this day, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

BURNS DAY & PRESNELL, P.A.

/s/ *James J. Mills*
NC BAR NO. 36529
PO Box 10867
Raleigh, NC 27605
919.782.1441 (phone)
919.782.2311 (fax)
Jmills@bdppa.com